May it please the court. My name is Daniel Drake. I'm a lawyer from Phoenix, Arizona, and I represent Gerald Brown here this morning. Because of some developments in the case since the time it was first briefed in 2009, I will not be arguing today anything having to do with the sufficiency of the evidence argument. Do you, by the way, have any idea why this case is so old? Yes, let me explain. Briefing was completed in September of 2009. Following the briefing, I made a motion to stay the case so that a motion for new trial could be filed in the district court. That was originally denied, subject to leave to file again once the district court indicated a willingness to grant the motion for new trial. I then filed a pleading in the district court before this case was set for oral argument. It was then set for oral argument, bumped off the calendar because the district court had not ruled on the motion for new trial. The district court did not rule on that motion for new trial because there were experts involved, an appointment of experts, things of that sort, that ran it off into the early part of 2011. And on 2011, the third of that January, the district court indicated it was inclined to grant the motion for new trial as to count five. That was a count to pertain to the street sweeper, the shotgun. And at that point, things went back to the district court. The prosecution filed a motion to dismiss count five before the court ruled on the motion for new trial. The court granted that, dismissed count five with prejudice, and at that point, then, the case came back for resetting of oral argument. So the street sweeper issue is out of the case? I'm sorry? The street sweeper issue is out of the case? It is out of the case. Wouldn't it be nice if somebody told us that? No, really. I mean, wouldn't somebody file us a piece of paper and tell us that the issue was so-and-so and so-and-so are no longer before the court? Well, that was my fault, Your Honor, and I'll take the blame for that and apologize. I'm serious, actually. I mean, we have people working. I'm working. We're all reading things that turned out to be totally irrelevant. Yes, it is, and I apologize. And if I hadn't asked, I wouldn't have found that out either. Pardon me? If I hadn't asked, I wouldn't have found that out either. If I hadn't asked why the case was so old, this never would have come out? No, no. Okay. It was not part of my initial discussion. I was going to get to it after I settled a bit more about the statement. All right. Go ahead. Also, Your Honor, one of the things that comes into play has to do with the expert testimony. The bulk of the expert testimony that came in pertained to the street sweeper. And the part that we objected to was the fact that they talked about the history and the rationale behind the legislation. Right. So the whole street, everything about the street sweeper is out of the case? I'm sorry? Everything about the street sweeper is out of the case, including suppression and everything about it? Because the street sweeper is, there's no conviction on the street sweeper. Yes. All right. Go ahead and tell me. All right. The question here really is, did the actions of the officers in exceeding the scope of the warrant convert what was a permissive and warranted search into something that was not authorized by law, a general search that required. The only thing that was discovered that is now relevant is the silencer. Is that right? The silencer is the only evidence. Did the silencer discover by anything that had to do with the exceeding of the warrant? No. The silencer was found within the house. Locked up in a pinball machine. Pardon me? Locked up in a pinball machine. Yes. So what's the problem? I mean, I understand that they seriously exceeded the warrant, but what's the problem? They had a warrant for this. Well, and the district court excluded all the evidence that they found when they exceeded the warrant at a very early stage. I mean, yeah, this was reprehensible that they took the warrant as just sort of a general warrant to search whatever they darn well pleased. But the district court was, I think, pretty scrupulous in saying, yeah, you exceeded the warrant. We're going to throw all of this stuff out. Yes. No, the district court did that. And my point is that the silencer was clearly something that was within the warrant and found in a place where the police had a right to look. It wasn't within the warrant. The firearms were not included within the warrant. Right. But they were looking for drugs. They were looking for drugs. And clearly drugs could have been hidden in the mechanism of the pinball machine, which is where they discovered the silencer. Yes. That's the case. And with respect to the other aspects about the seizures and whether they exceeded it, these officers seized lots of items, that is to say, firearms, that had no indication that they were in furtherance of the drug crime or relevant to the drug crime. All but one of the firearms found in the house, 124, were unloaded. He may have a pretty good 1983 case. I'm sorry, Your Honor. He may have a pretty good 1983 case for the search that seriously exceeded the warrant. He may. Understood. I'm arguing a little ahead of that right now, that it should have been suppressed, that the remedy that the court imposed, while good at that point, didn't go far enough. And so that takes care of the issue really on the street sweeper and things of that sort. With respect to the statement, let me turn to that, because I want to talk about that briefly. With respect to the statement, it was made after the defendant had been indicted. It was made to an officer who had come to Prescott to arrest him and take him to Phoenix for his arraignment. The ---- My understanding is that there was a voluntariness issue sort of desultorily raised, but there was never a Miranda issue as such. Is that right? There was not a Miranda issue raised. That's right. I'm arguing that this was involuntary, not simply that it was a violation of Miranda. Right. How is it involuntary, aside from whether there was a waiver? Well, the testimony at the hearing was that Mr. Brown didn't say he wouldn't talk to the officers, but Mr. Agent Iber couldn't recall what the precise ---- But all of that is Miranda language, right? I mean, no one's beat him. Nobody coerced him. No one threatened him. No one gave him any benefits. No one did anything except talk to him. Right. And they talked to him about a ---- How is it a voluntariness problem? They talked to him about a topic that was designed to induce incriminating evidence. Fine. That may be a Miranda problem, but it's not a voluntariness problem. My argument would be that they overbore his will by talking with him about it in this fashion. It's just like ---- Do you have any case like that that calls that sort of thing a voluntariness problem? Miranda is prophylactic. Yes. And the notion is that you need to warn people and you need to not talk to them until they have the warning. But once you have the warning, you can talk to them. And if there was nothing wrong with the warning, they could talk to him. So what's the problem? Well, the problem is it was a tactic. It was employing the part of the officer to get incriminating evidence out of Mr. Brown. And that was after ---- Are you ---- I mean, honestly, the one issue here that seemed to me to have some possible feet was the notion that they didn't have a warrant for any firearms and they went in and picked up all the firearms on the theory that firearms can ---- are sort of automatically evidence of a drug offense. And the question is, is that so when you have somebody who's really obviously a collector and is handing away all of the firearms and has them under lock and key and doesn't seem to ---- and has lots of firearms that don't seem to have anything to do with drug offenses. But maybe that's not pertinent to the silencer, and maybe that's why you're not arguing it anymore. Well, I'm arguing it because I think when you get to that point that they ---- the way they conducted the search, that's what I believe throws it over the top into the area where the suppression of everything should have been the remedy. But you don't have any problem with the plain view part of this? If they otherwise had the authority to be there and if we're not going to throw out the entire search because of other things that happened, you don't have a plain view problem? The plain view with respect to the silencer I think is different than the issue with respect to most of the other items. I see. I see. I will argue, however, that with respect to the silencer, it appeared to be part of the equipment in the board of the pinball machine. And so in that situation, I think once the officer picked it up and looked at it, he could make a determination that it appeared to be a silencer. But when he ---- Was possession of the silencer itself a violation of the criminal statutes or was it only the fact of an unregistered silencer? Could he have ---- could Brown lawfully possess the silencer? He could have lawfully possessed a silencer had it been registered to him. And also had it had a ---- A serial number. A serial number on it. A visible serial number. So you might have been able to see that right off the top. Right. Because it had to have a serial number. And it didn't have one. It did not have one. So it could have been facially unlawful, just looking. Unlike all the other guns, just looking at it, it could have been unlawful. Right. But I don't think there was anything in the record about the officer looking at it initially for the serial number. And then I think that concludes my part. I want to save some time for rebuttal. If there are other questions, I'm happy to take them. Thank you very much. Thank you. Did the government inform us that these ---- that the silencer ---- that the street sweeper issuers were out of the case? Yes, Your Honor. There was a pleading filed, and I want to say, Joan Rufinok, appearing on behalf of the United States District of Arizona. Yes. After the court ---- let me back up. When the issue ---- when this case was set for argument and the defense asked that it be set off in order to go before the district court for the new trial motion, this court ordered the defense or the defendant to file a pleading once the district court had resolved that. And in fact, defense did file a pleading with the court informing the court that the motion for new trial had been ---- or the court ---- I'm sorry. I'm totally confused on this. The district court entered an order saying that it intended to file a motion for new trial or to grant the motion. And so then the government did move to dismiss, and then the defense filed a motion with this court or a pleading with this court informing the court that the district court indicated its intent to grant the new trial motion, that the government had moved to dismiss, that the court had granted the motion to dismiss, and that the only count that remained before this court was count 1, which is the silencer ---- I'm sorry, count 5, which is the silencer. Count 1 was the street sweeper, and it was gone. So that would be ---- I only have to figure out ---- I believe that was like February of 2011. I don't know about my colleagues, but I was not aware of it. Okay. Thank you. Okay. It's the government's position that the suppression issue was waived by failing to specifically raise that issue in the district court. While there may be somewhat of a factual predicate for it, because the legal argument was not made, the government didn't respond and present evidence with regard to it. But there is evidence in the record that the government could have disputed the defendant's position and facts with regard to that. And I point specifically to Deputy Tobin's testimony on cross-examination when he told defense counsel he was surprised to hear that 10 to 12 locks had been popped, using his term, that he believed it was a much lower number than that. It wasn't pursued, though. And if you look at the finding of the district court, the district court said specifically assuming that we're talking about the four locations within the warrant, and that's what we're doing, and I don't have any evidence to the contrary that the agents weren't in fact there looking for drugs, then in that case how can I not find that the items that were found were found in plain view with regard to the firearms. And in this case, the only issue before the court is whether or not the silencer was found in plain view. And the testimony of the discovering agent, he was the SWAT team commander, very familiar with firearms. He said that as soon as he saw the item in the pinball machine, he realized that it was a silencer. As the Court's also aware from the testimony, the silencer was wrapped up in a black heat wrap, so in fact there were no markings on it, but even if there had been markings on it, they wouldn't have been visible because of the heat wrap that was on the silencer. And so it was not lawful to possess because it could not be registered in its condition and it was not in fact registered, and it was not registered to the defendant. If he saw a silencer wrapped up in a heat wrap and he didn't first pick it up and turn it around and so on, how would he know that it didn't have any markings on it? Because the regulations, the testimony was that the regulations require that there be specific markings on it and that they be visible. They have to be a specific size. They have to be a specific depth. They have to include specific information, which is the serial number, the name of the manufacturer, the location of the manufacturer. And so because this was heat wrapped in plastic, it was covered, it couldn't be those markings were not visible. And because they weren't visible You can't put a silencer in a bag? Yes, you can. But this was, I guess I'm not explaining it, it was like it was shrink wrapped All right. But how is that different than having it in a bag? I mean, the point is that when you say that the markings have to be visible, it means it has to be visible when the thing is exposed. But it can't mean if you wrap it up that it still has to be visible. And because I don't have the item before me, I can't. I believe it's like rubberized around it. We're talking shrink wrapped like you can just take it off. It was a coating, a rubberized coating. That had a functional purpose for use as a silencer rather than to protect it to keep dust from getting inside it. Correct. And this, whatever you're talking about, was not going to be taken off when you used the silencer. Correct. It's as though they wrapped duct tape around it and put it a half an inch thick of duct tape. Correct. The testimony was that it was an improvement to the silencer that was not mentioned in the instruction manual that was found in the same pinball machine. So it was, all I can say is that it was an improvement. It was made to make, it was done to make the silencer even better. But it wasn't, it didn't so disguise a silencer that the police officer could not identify it as a silencer? Correct. Because it was a seven to eight inch tube, an aluminum tube with threading on the end and a cap, a ring on it. And it was obviously clearly a silencer, that that was readily apparent. And the SWAT officer that discovered it testified to that. With regard to the statements that were made by the defendant, again, the government's position is that the Sixth Amendment argument that was made on appeal was waived by failure to make it before the district court because the only thing that was said to the district court was we concede that Miranda was given, but we would like to have something said on the voluntariness. We'd like to have a hearing on that. But he still says he's arguing voluntariness. And the district court held a hearing on that. And the testimony was that there was general discussion about the defendant's appearance. He looked very much like Santa Claus because he had the white hair and the beard. And he was asked if he played Santa Claus at the mall. And then the issue came up about hunting in Prescott. I don't know if the Court is aware. Prescott's a rural area. And it was an 80-mile drive from one location to the other, and there was general discussion during the drive. It was not the questions that, that asked about hunting were not specifically designed to elicit any information about a silencer. Kagan. But is there any way that could be a voluntariness violation no matter what? There was nothing at all. At the Miranda violation, possibly. I mean, I don't know what the details are, but I don't see how. No. And the district court found clearly it was just a conversation. It was purely voluntary, and there was no issue at all. And with regard to the Miranda violation, the defense counsel conceded that Miranda had been given, and he wasn't challenging that. And that's in the district court record. If you'd like a cite on it, I can give it to you. If the court has no other questions, I'll submit on the brief. Thank you very much. Briefly, Your Honor, on the issue of the, at the start of the hearing, he raised the issue regarding the method of execution of the warrant. That is to say, Mr. Black, trial counsel, and explained to the court that he had discovered recently in some materials he just got the night before that there had been searches of these places that were not set forth in the actual warrant. And at that point, that's why he wanted the court to take some testimony on that issue of the execution of the warrant. And with respect to the silencer and the discovery of it, the officer who found it was Starin, was his last name, S-T-A-R-I-N. And so there's some discussion and trial testimony about him and what went on. What about the notion that, first of all, which of the cases you rely on with regard to this general search notion that if there's a search that best exceeds the warrant, even the part that doesn't exceed the warrant can be excluded? Well, the two Ninth Circuit cases that I've cited were Reddick and Chen. Reddick involved a search where they had gone to a Federal magistrate or Federal officer to seek a warrant for, I believe it was cocaine, and it was either declined or did not move forward from that point. They then went to a state court judge, if I recall it correctly, and the state court judge issued the warrant for marijuana, a marijuana conspiracy. And when the agents got to the house of Reddick, they conducted the search for the cocaine conspiracy and seized about 2,400 documents and items of that sort that were relevant to travel and cocaine and things of that sort. In Chen, what happened was the – it was a video of surveillance. But the end of the story in Reddick, for example, was under the circumstances it was not possible for the court to identify after the fact the discrete items of evidence which would have been discovered by the agent had the agents kept the search within the bounds permitted by the warrant. But that's not true here. It's easy to figure out which ones. So that doesn't seem to support you. So what else do you have? It doesn't say that you – It's not as clear. It's not clear. Okay. It's pretty clear. But anyway, what else do you have? Then in the – What are the cases there that says that even when you know that this was within the scope of the warrant, you still throw it out? May I have just a moment? Because I thought Reddick obviously relied upon some. And – When you talk looking at the other end of the court, we won't hear you. I'm sorry? You were speaking looking at the other end of the court. We don't hear you when you speak looking at the end of the court. Oh, I'm sorry. Thank you. I thought Reddick relied upon some other cases in terms of coming up with that particular position. I can't recall the particular – its authority for the result that it reached at this time. But the other thing I would say with respect to the voluntariness of the statement, let me come back to that for just a second. There were seven charges originally filed against Mr. Brown. Some of those charges pertain to being a felon in possession of firearms, and that would have made the 124 firearms found in the residence and other places relevant. The government ultimately dismissed that on its own motion. I believe they had a defect or failure of proof with respect to the felon in possession charge. And that was done three days before the trial. At the time the statement was made to Mr. Brown, or made by Mr. Brown, to Agent Iber, he was in the process of taking him down to book him on being a felon in possession. And with that he starts a discussion that says, so do you ever hunt up here in this area? And from there it leads into, yeah, I hunt, I'm a big hunter. He then comes out, well, I'm a gun collector, you got the wrong guy, I don't do anything bad with these, and so on. And that's where he talks about the silencer. That's how that conversation started. And my point is that he was asking him about a topic that would clearly involve or implicate some sort of response with respect to hunting and firearms when he's charged with being a felon in possession. And you say there's something wrong with that even though, as you agree, he's been given Miranda warnings effectively? Yes. And Brown couldn't have said, I don't want to talk about it? Absolutely, Brown could have said it. But then that means that it wasn't involuntary. If Brown could have said, I don't want to talk about it, it's not involuntary. And you don't have a Miranda problem because he's been Mirandized. Well, I'm not sure I agree 100% with your position, Your Honor, in the sense that if you take a look at Brewer, what happened there was the defendant had said on other occasions in this car ride he didn't want to talk about it. But the officer said, you know, this girl deserves a Christian burial, there's a snowfall and we've got to find the body. Right. But the Supreme Court thought that those statements, the Christian burial comment, really played on the guy's will to not respond and tell him where the little girl was buried. We don't really have any evidence here that Ivers said something that triggered something in Brown's conscience that made him want to talk about hunting or silencers or his familiarity with guns. This appeared to be casual conversation between two guys who were both very knowledgeable about weapons on an 80-mile drive between Prescott and Phoenix. Right. Okay. We're one of the guys who's charged with firearms violations. That's my point. Wasn't Brewer essentially still a Miranda issue? Brewer was still a Miranda issue, was he not? The problem was that he hadn't waived his right to counsel. The problem wasn't that there was an involuntary statement. I believe in Brewer there were – I believe in Brewer it went beyond the issue of Miranda. But I'd have to check my facts on that, Your Honor. Okay. Thank you very much. Your time has expired. I thank both of you for your arguments, United States v. Brown. And we'll go to the last case of the day, Sound Appraisal v. Wells Fargo Bank. Thank you.
judges: Wallace, Berzon, Bybee